**In re: J.R., a Minor Child**

**Appeal of: DEPARTMENT OF HUMAN SERVICES**

Superior Court of Pennsylvania.

Submitted April 18, 2005.
Filed May 17, 2005.

Cynthia N. Keller, Philadelphia, for appellant.

Nycole E. Watson, Philadelphia, for appellee.

Jay Meyers, Philadelphia, for N.I., participating party.

William E. Gibbons, Philadelphia, for H.R., participating party.

Before: ORIE MELVIN, BENDER and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 The Philadelphia Department of Human Services [DHS] appeals a juvenile court order that directed DHS to provide home telephone service to the father of a dependent child. We vacate the order.

¶ 2 The minor child J.R. was adjudicated dependent on November 6, 2002, subsequent to a voluntary placement agreement signed by his father [Father]. J.R. was born in July, 1993 and resided with Father prior to coming into the custody of DHS. Father acknowledged that he was unable to provide adequate supervision to J.R., who suffers from a behavioral disorder. Since late 2003 or early 2004, J.R. has lived in a therapeutic foster home where he receives special education and therapy.

¶ 3 Since J.R.'s adjudication of dependency, permanency hearings have been held at regular intervals in accordance with the Pennsylvania Juvenile Act.[1] Father did not attend the February 2004 hearing, and his whereabouts at that time were unknown. Father did attend the June 2004 hearing, at which time he was given a bi-weekly supervised visitation schedule and transportation tokens for the visits. At the September 2004 hearing, a DHS social worker testified that Father was attending only approximately fifty percent of the visits. Father testified that he wanted to visit with J.R., but the visits were cancelled when he did not call DHS on the Thursday before to confirm his attendance. DHS reiterated that its policy requires Father to call the agency to confirm his visits or they will be cancelled.

¶ 4 After a DHS social worker informed the court that Father did not have a telephone, *sua sponte* the court advised DHS that Father needed home telephone service. DHS objected to providing telephone service for Father and suggested some alternatives (providing the modest funds necessary for the biweekly phone calls; providing a calling card; having Father's friend make the calls, as she has done in some instances previously). The court did not entertain these alternatives, but ordered DHS to provide home telephone service to Father to enable him to make the biweekly calls to confirm his visits with J.R.

¶ 5 DHS filed a post-trial motion for reconsideration of the order to provide telephone service to Father on October 7, 2004. The juvenile court denied that motion on November 3, 2004. DHS filed this appeal on October 29, 2004, raising the following issues. First, DHS contends that the court erred in ordering home telephone service without conducting an inquiry into the other adequate, reasonable and equally effective, but less costly alternatives that were presented. Second, DHS contends that the court committed an error of law in basing its order for telephone service on alleged facts regarding the cost of home telephone service that were not in the certified record.[2] Third, DHS contends that the court abused its

---

1. 42 Pa.C.S.A. §§ 6301–6365.

2. *See infra* note 4 for our disposition of this issue.

discretion in ordering home telephone service for Father in the absence of a finding that this service would insure consistent visitation between him and J.R. and thus serve the child's emotional and moral welfare.

¶ 6 We must first address whether the order in question is appealable. The order is interlocutory, as there has been no final disposition and the parties remain in court. *See In re Tameka M.*, 368 Pa.Super. 525, 534 A.2d 782, 784 (1987), *aff'd*, 525 Pa. 348, 580 A.2d 750 (1990). Nonetheless, we may review an interlocutory order if it fits within the confines of the collateral order doctrine. By this doctrine, an interlocutory order is appealable if "(1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost." *In re J.S.C.*, 851 A.2d 189, 191 (Pa.Super.2004) (citing Pa.R.A.P. 313).

¶ 7 We find that the order in question is a collateral order, as it meets the three requirements above. First, the order for telephone service is separable from and collateral to the main cause of action, which is the dependency determination and disposition. Second, the right involved is DHS's discretion to determine allocation of limited resources. This is a right too important to be denied review. *See In re Tameka M.*, 525 Pa. 348, 352, 580 A.2d 750, 752 (1990); *J.S.C.*, *supra* at 192. Third, if review is postponed and DHS ultimately prevails, it is unlikely that the agency will be able to recoup the funds paid out pursuant to the court order. Thus we find that the order is appealable under the collateral order doctrine, and we therefore have jurisdiction to review the merits.

¶ 8 Our standard of review is abuse of discretion when we review a juvenile court order requiring a child welfare agency to fund a particular service. *In re N.E.*, 787 A.2d 1040, 1042 (Pa.Super.2001) (citing *Tameka M.*, *supra*, 525 Pa. at 348, 580 A.2d at 750). An abuse of discretion is not merely an error of judgment, but is, *inter alia*, a manifestly unreasonable judgment or a misapplication of law. *Id.*

¶ 9 The juvenile court exercises continuing, independent discretion with regard to the interest of a dependent child. *Tameka M.*, *supra*, 525 Pa. at 354, 580 A.2d at 753. This authority derives from section 6351 of the Juvenile Act, which grants the court power to issue "orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the [dependent] child." 42 Pa. C.S.A. § 6351(a). In its disposition orders, the court also has the express authority to impose "conditions and limitations." 42 Pa.C.S.A. § 6351(a)(1), (a)(2), (a)(2.1) As explained by our Supreme Court, "[i]n ordering a disposition under Section 6351 of the Juvenile Act, the court acts not in the role of adjudicator reviewing the action of an administrative agency, ... rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests." *Tameka M.*, *supra*, 525 Pa. at 354, 580 A.2d at 753. (quoting *In re Lowry*, 506 Pa. 121, 127, 484 A.2d 383, 386 (1984)).

¶ 10 In construing the Juvenile Act, both the juvenile courts and the appellate courts must also be guided by a fundamental purpose of the Act, which is "[t]o provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S.A. § 6301(b)(1.1); *Lowry*, *supra* at 130–31, 484 A.2d at 388. This purpose imposes on a child welfare agency the legal duty to

provide financial support for the care and treatment of a dependent child. *Tameka M., supra,* 525 Pa. at 357, 580 A.2d at 755.

¶ 11 Applying the above principles, our Supreme Court upheld a juvenile court order mandating payment by a child welfare agency of non-reimbursable tuition at a special school. *Tameka M., supra,* 525 Pa. at 358–59, 580 A.2d at 755. The agency sought to send the child at issue to a school whose expenses were reimbursable by the state; however, the court found that this school was not adequate for the care and treatment of the particular child. Hence, the court ordered the agency to pay expenses for the child at a special school, where the child's care and treatment were adequate, even though these expenses were not reimbursable to the agency. *Id.* Relying on *Tameka M.,* a panel of this Court affirmed a juvenile court order requiring a child welfare agency to pay the unreimbursed dental expenses of a child deemed to be dependent. *N.E., supra* at 1042, 1044.[3]

¶ 12 In the present case, the service ordered by the juvenile court was home telephone service for the father of a dependent child. DHS policy requires that a parent call the agency a few days prior to a scheduled visit with a dependent child to confirm the parent's attendance at the visit. The court determined that Father required home telephone service to enable him to call DHS and confirm his biweekly visits with J.R. DHS contends that this order was an abuse of discretion and an error of law, because the court did not consider alternatives and because the court heard no evidence as to whether providing such service would benefit the child.

¶ 13 First, we address DHS's contention that the court did not consider equally effective alternatives before ordering home telephone service for Father. In *Tameka M.,* our Supreme Court addressed as dicta the limitations on a court presented with two equally effective alternatives for satisfying a dependent child's need under the Juvenile Act. Specifically, the Court stated that, when a court is presented with two equally effective alternatives, the cost of only one of which is reimbursable, "it would be an abuse of discretion not to direct" that the reimbursable alternative be chosen. *Tameka M., supra,* 525 Pa. at 357, 580 A.2d at 755; *see also Dept. Public Welfare v. Devereux Hosp. Texas Treatment Network,* 579 Pa. 313, 855 A.2d 842, 850 n. 13 (2004) (recognizing the dicta in *Tameka, M.* relevant to the situation where two equally effective options were presented to the juvenile court). We interpret the Court's reasoning in *Tameka M.* to require that a juvenile court consider the alternatives presented to address the needs of a dependent child; then, if two equally effective alternatives are available, the court must chose the one that is less costly to the child welfare agency.

¶ 14 In the present case, our review of the record reveals that the court did not consider or weigh the alternatives to home telephone service that were presented to it. After the court raised the issue of home telephone service for Father *sua sponte,* DHS attempted to suggest alternatives, but the court refused to contemplate these suggestions, as demonstrated by the following exchanges:

Court: Now, how can you make it easier for [Father][?]

Mr. Agaro, DHS social worker: I believe Your Honor I have made a number

---

3. The agency in *N.E., supra* argued that it was not responsible for N.E.'s dental bills because she no longer had status as a dependent child. The dissent agreed with the agency's position. *See N.E., supra* at 1044–45 (Beck, J., dissenting).

of efforts to make it easier for them. He does not have a phone.

Court: ... the worst is we have to get him a phone.

Mr. DeJesus, worker with J.R. at his therapeutic foster home: He has a friend.

Court: No, we have to get him his own phone.

Ms. Edwards, DHS counsel: Your Honor, if we can—

Court: Can you get him a phone [?]

Edwards: Your Honor, we cannot get him a phone just to facilitate calls to confirm visits, Your Honor.

Court: But it's a requirement. He can't see the child until he calls.

Edwards: Your Honor.

Court: No, we are getting him some basic service for $10 a month.

Ms. Watson, child advocate: Basic is about $30 a month.

Edwards: To make one call biweekly to confirm a visit [?]

Court: Just basic calls in and out between $10 and $20, no call waiting.[4]

Edwards: Your Honor at this point it's irrelevant.

Watson: Does the father have a cell phone? How does he talk to everybody else?

Edwards: Your Honor, the call is one time every two weeks. DHS or the agency can provide it. Your Honor, can the agency complete what's going on.

Court: Get [Father] basic phone service.

Edwards: That's not the issue, Your Honor.

Court: That's number one.

N.T., 9/30/04, at 19–21.

Court: Put it in [the written procedures] to have basic service.

Edwards: Can you also put my objection to providing a $25 service for a biweekly visit which there has been no issue with calling so far to confirm, Your Honor.

Watson: Your Honor, it might be cheaper to get him a calling card.

Court: They can do what they want to get it. I mean this is one of the necessities of life now.

Edwards: Your Honor, that is not for DHS to provide phones to everyone who does not have one.

Court: Anyone in trouble, he's in trouble.

N.T., 9/30/04, at 23–24.

Court: He can have a phone in his room.

Watson: Can he get a phone in his room?

Agaro: Yes, he can get a phone.

Court: We're not going to talk about this anymore. It's in the order.

N.T., 9/30/04, at 25.

¶ 15 The transcript leaves no doubt that the court did not consider the alternatives to home telephone service that were raised in court. The child advocate suggested a calling card. Counsel for DHS suggested that the agency could pay for the individual calls (presumably much the same way as the agency already provides Father with transportation tokens for his visits with J.R.). The court simply refused to give

---

4. Although the court and the child advocate opine about the cost of basic home telephone service, no testimony was taken as to the true cost of installation and monthly service. The court claimed in its opinion of January 11, 2005 that it had provided DHS with information from a telephone company that would have enabled Father to receive home telephone service without charges. No evidence was taken regarding any such service at the hearing, nor is any information on free telephone service a part of the certified record.

any consideration to these alternatives, either of which would seem an equally effective way for Father to make his biweekly confirming phone call to the agency. In its refusal to consider alternatives, to determine if some alternatives were equally effective, and then to choose the less expensive of equally effective alternatives, the court abused its discretion.

¶ 16 We next address DHS's contention that the court abused its discretion in ordering home telephone service for Father, absent a determination that it would serve J.R.'s welfare. DHS argues that no evidence was presented to show that providing Father with home telephone service would increase his visitation rate and thus benefit J.R.

¶ 17 The court has statutory authority to issue orders to protect the interests of dependent children. 42 Pa.C.S.A. § 6351; *Tameka M., supra,* 525 Pa. at 354, 580 A.2d at 753. Such orders must be based on the court's determination of the course that is "best suited to the protection and physical, mental, and moral welfare of the child." 42 Pa.C.S.A. § 6351(a). The court as well as the child welfare agency also must be guided by the purposes of the Juvenile Act, which include preserving the unity of the family whenever possible and providing "for the care, protection, safety and wholesome mental and physical development of [dependent] children." 42 Pa.C.S.A. § 6351(a). The legal standard is the best interests of the child. *See In re T.R.,* 557 Pa. 99, 731 A.2d 1276, 1285 (1999) (Newman, J., dissenting); *In re Griffin,* 456 Pa.Super. 440, 690 A.2d 1192, 1200 (1997).

¶ 18 In the present case, all parties agree that consistent, regular visits with Father are in the best interests of J.R. The goal for J.R. remains reunification with Father, and regular visits constitute an essential step in meeting that goal.

However, we agree with DHS that the evidence of record does not support the inference that home telephone service for Father will ensure his compliance with the visitation schedule and thus promote family reunification and J.R.'s welfare.

¶ 19 Uncontroverted testimony revealed that Father attended only approximately half of his biweekly visits with J.R. The reasons for this poor attendance were unclear from the testimony presented in the hearing. The hearing was brief and short on specifics. No evidence was presented as to how many visits were cancelled because Father failed to confirm, although Father testified that the agency had cancelled visits. Furthermore, no evidence was presented that a home telephone would alleviate whatever problems had prevented Father from calling the agency. Father speaks only Spanish and may have some difficulty using the agency phone message system, although uncontroverted testimony indicated that he had been given instruction numerous times regarding how to call. In addition, he was given the names and numbers of two bilingual agency personnel who can communicate with him in Spanish. Father's counsel stated that Father had a bilingual friend who often translated for him during his phone calls to the agency and attended the visits with him. Other uncontroverted testimony indicated that at least twice Father and this friend confirmed an up-coming visit by phone, but then did not appear for the visit. On this record, we cannot agree with the juvenile court's inference that securing home telephone service for Father will ensure his consistent participation in visits with J.R.

¶ 20 Aside from its inference that home telephone service would increase the frequency of Father's visits to J.R. and promote preservation of the family, the court also seemed to justify its order for

home telephone service on several other grounds. The court stated its belief that telephone service is "one of the necessities of life now." N.T., 9/30/04, at 24. In addition, the court wrote that telephone service would reduce Father's anxiety, limit the invasion of Father's privacy, and avoid the loss of Father's dignity. Trial Court Opinion, 1/11/05, at 3. No evidence was presented that Father was burdened by anxiety or by a loss of privacy or dignity. More importantly, these factors reach areas that are beyond DHS's statutory mandate or financial resources.

¶ 21 Our Supreme Court has held that DHS has a legal duty to give financial support to dependent children. *Tameka M., supra,* 525 Pa. at 357, 580 A.2d at 755. But this duty cannot be interpreted as a mandate to provide the necessities of life to parents whose children have been adjudicated dependent. Nor can this duty be reoriented to give primacy to parents' direct needs. Rather, the needs of children who have been adjudicated dependent are, and must remain, the polestar. DHS has limited resources, and those resources must be focused on its central mission—to provide for the protection and welfare of dependent children. Similarly, while the court has broad discretionary authority under the Juvenile Act, its jurisdiction is limited by the needs and interests of the child. *In re Frederick F.,* 400 Pa.Super. 542, 583 A.2d 1248, 1253 (1990).

¶ 22 We of course realize that providing a telephone—or a home or a job—to the parent of a child who has been adjudicated dependent would in many cases aid not only the parent but also the dependent child and promote family unity. In recognition of this fact, many services are available to parents to provide assistance and support for their efforts at reunification with their dependent children. Indeed, the Juvenile Act requires that "reasonable efforts" be made to reunify the family once a child has been declared dependent. *See* 42 Pa.C.S.A. §§ 6351(e) & (f). Nonetheless, the focus of the Juvenile Act is the dependent child, not the parent. The statute cannot sustain an interpretation that would allow the court to order parental services that do not directly promote the best interests of the child or that are beyond the statutory standard of "reasonable efforts" to reunify the family.

¶ 23 In ordering telephone service that would benefit Father without a finding that it would serve the dependent child's needs, interests, and welfare, the court committed an error of law.[5] We therefore vacate that portion of the juvenile court's order that directed DHS to provide home telephone service for Father.

¶ 24 Order vacated.

---

5. Whether the provision of home telephone service falls into the category of "reasonable efforts" to reunify the family was not addressed by the juvenile court. By requiring only "reasonable efforts" to reunify a family, the statute recognizes that there are practical limitations to such efforts. 43 Pa.C.S.A. §§ 6351(e) & (f). It is not sufficient for the court to find simply that an action will promote family reunification; the court must also determine whether the action constitutes a *reasonable* effort towards reunification. Under the facts of this case, we do not believe that provision of home telephone service constitutes a reasonable effort.