J-S75030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.T. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.N., NATURAL MOTHER | |
| | No. 2298 EDA 2014 |

Appeal from the Order Dated July 11, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000635-2013 CP-51-DP-0002521-2011
FID:51-FN-004746-2011

BEFORE:  ALLEN, J., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 04, 2014**

D.N. (Mother) appeals from the trial court's order involuntarily terminating her parental rights to her daughter, D.T. (born 7/2006).  After careful review, we affirm.

The Department of Human Services (DHS) removed D.T. from Mother's care on December 22, 2011, after receiving a report that Mother had left then-five-year-old D.T. home alone.  D.T. was immediately placed into protective custody and has remained in foster care since that date. Mother was subsequently charged with endangering the welfare of a child and reckless endangerment of another person; a stay-away order was entered for D.T. as a condition of Mother's bail.  On January 18, 2012, D.T. was adjudicated dependent and committed to the care of DHS.

DHS prepared a Family Service Plan (FSP), listing the following objectives for Mother: participate in drug and alcohol assessment; participate in mental health evaluation; sign authorizations for DHS to obtain copies of her providers' records and reports; complete a parenting capacity evaluation; participate in anger management classes; participate in family therapy when recommended by a therapist; obtain and maintain suitable housing; and attend all scheduled visits with D.T. At Mother's first permanency review hearing in April 2012, she was found to be in moderate compliance with her FSP objectives. At her next two permanency reviews in July and October 2012, Mother was found to be in full compliance with the FSP and was granted unsupervised community day weekend visits with D.T. However, in December 2012, the visits reverted to supervised contact after D.T. reported that Mother was "getting high" at visits.

In May 2013, after consistently attending drug and alcohol treatment, the court found that Mother was in moderate compliance with her FSP objectives. However, Mother was referred for a parenting capacity evaluation. At the next meeting on June 6, 2013, Mother's permanency goal was changed to adoption. On October 1, 2013, DHS filed a petition to terminate Mother's parental rights to D.T. At the initial court listing for the goal change/involuntary termination of parental rights, Mother arrived at the courthouse with a pair of brass knuckles, two knives and a vial of urine in her purse. She was immediately taken into custody, charged, and subsequently found guilty of the crime of possessing a prohibited offensive

weapon and furnishing drug-free urine as a result of the courthouse incident.[1]

In May 2014, Mother pled guilty to aggravated harassment of a prisoner and was sentenced to serve 23 months' imprisonment, with immediate parole. She was ordered to continue to participate in drug screening and treatment programs and to seek and maintain employment. On March 8, 2014, Mother was again arrested, this time for possession of a controlled substance; she pled guilty, received an 18-month term of probation and entered a drug treatment program.

On July 11, 2014, the court held a termination hearing during which DHS presented the testimony of several social workers involved in Mother's case. The basic tenor of the DHS witnesses' testimony was that Mother continually failed to successfully complete her objectives, despite the fact that she was provided with services and resources to address her issues while D.T. was in placement. DHS offered evidence to show that Mother's compliance with the FSP fluctuated from its inception in 2011 and ultimately remains unsatisfied. In sum, Mother's parenting skills, aggressive behavior and ability to maintain sobriety had not improved. DHS also pointed out

_____

[1] Mother was sentenced to time in to 23 months in prison on the weapon charge, with 12 months of probation, and time in to 12 months in prison for the urine furnishing charge. However, the record is unclear as to whether those sentences were ordered to run consecutively or concurrently to one another.

the fact that because D.T. is a behaviorally and emotionally compromised child, who suffers from PTSD and AD/HD, and is a prior sexual abuse victim, she needs therapeutic services and medication management which requires ongoing redirection at school and at home. Ultimately, the trial court concluded that DHS met its statutory burden, by clear and convincing evidence, to terminate Mother's parental rights under sections 2511(a) and (b) of the Adoption Act.[2] This timely appeal follows.

On appeal, Mother contends that the trial court erred in terminating her parental rights where DHS did not make reasonable efforts to reunify her with D.T. and DHS did not prove by clear and convincing evidence that termination was proper under 23 Pa.C.S. §§ 2511(a)(1), (a)(2), (a)(5), and (a)(8).

In **In re J.R.**, 875 A.2d 1111 (Pa. Super. 2005), our Court stated:

> The Pennsylvania Juvenile Act, 42 [Pa.C.S.] § 6301 et seq., requires that "reasonable efforts" be made to reunify the family once a child has been declared dependent. 42 [Pa.C.S.] § 6351(e), (f). Nonetheless, the focus of the Juvenile Act is the dependent child, not the parent. The statute cannot sustain an interpretation that would allow the court to order parental services that do not directly promote the best interests of the child or that are beyond the statutory standard of "reasonable efforts" to reunify the family. By requiring only "reasonable efforts" to reunify a family, 42 [Pa.C.S.] § 6351(e), (f) recognizes that there are practical limitations to such efforts. It is not sufficient for a court to find simply that an action will promote family reunification; the court must also determine

_____

[2] **See** 23 Pa.C.S. § 2101, *et seq*.

- 4 -

whether the action constitutes a reasonable effort towards reunification.

***Id.*** at 1118.

Based upon the record, we conclude that DHS made reasonable efforts to promote the parent-child relationship where DHS fashioned a detailed and suitably tailored FSP to meet Mother's needs in order to reunify her with D.T. The recommended services specifically addressed Mother's drug dependency and tendency to exhibit explosive behaviors. DHS has been actively working with Mother for more than two years without success. Mother's procrastination and unwillingness to cooperate with DHS does not translate into a failure on DHS's part to provide reasonable services to her. ***See In re J.W.***, 578 A.2d 952 (Pa. Super. 1990) (adequate parenting requires action as well as intent).

With regard to Mother's contention that DHS did not prove its case to justify termination of parental rights, we note that the party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in 23 Pa.C.S. § 2511(a). ***In re L.M.***, 923 A.2d 505, (Pa. Super. 2007). Under section 2511(a), the focus is on the conduct of the parent. ***Id.*** We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. ***In re A.R.***, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. ***Id.***

Based on a detailed review of the record, we conclude that DHS presented clear and convincing evidence to terminate Mother's parental rights under sections 2511(a)(1) and (a)(5)[3] of the Adoption Act where: (1) D.T. has been in placement and foster care for two-and-one-half years; (2) Mother's ability to care for D.T. and remain available to her is entirely speculative due to repeated incarcerations and will take significant additional time to establish; (3) Mother has failed to successfully remedy the substance abuse problems and mental health issues which led to D.T.'s placement; (4)

_____

[3] We note that an appellate court must agree with the trial court's decision as to only one subsection of section 2511(a) in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380 (Pa. Super. 2004) (en banc). To terminate parental rights pursuant to section 2511(a)(1), a petitioner must prove by clear and convincing evidence that:

> The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). Moreover, under section 2511(a)(5), a petitioner must prove by clear and convincing evidence that:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

Mother has not substantially complied with DHS's family service plan; and (5) termination would best serve D.T. needs and welfare where she has significant behavioral and emotional problems. **See In re Z.P.**, 994 A.2d 1108, 1121 (Pa. Super. 2010) (Adoption and Safe Families Act's policies demand reasonable efforts within reasonable time to remedy parental incapacity; termination of parental rights proper where child in foster care for first two years of life and need for permanency should not be suspended where little rational prospect of timely reunification with parents exists).

In sum, due to Mother's significant substance abuse and behavioral issues, she is unable to provide a suitably safe and emotionally and financially stable life for D.T. Although there have been spurts of effort to comply with the FSP, Mother waited for over one year to complete parenting and anger management classes. Moreover, her drug and alcohol treatment program was not completed until four months *after* DHS filed its petition to terminate. **See** 23 Pa.C.S. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."). As the trial court astutely noted, "[t]his child has been in care for 31 months. The child needs permanency. Mother is [] still not ready to take care of [D.T.]." N.T. Termination Hearing, 7/11/14, at 61.

Accordingly, we conclude that the trial court's decision to involuntarily terminate Mother's parental rights was not an abuse of discretion or error of law. ***In re A.R.***, ***supra***.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/2014