J-S14032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2992 EDA 2018 |

Appeal from the Order Entered September 24, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0002069-2018,
FID: 51-FN-001751-018

BEFORE:   LAZARUS, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                    **FILED APRIL 29, 2019**

R.S. (Father) appeals from the Court of Common Pleas of Philadelphia County order adjudicating his minor daughter, Y.S. (Child), born in July 2001, dependent.  After careful review, we affirm.

**I.**

In July 2018, Child came to the attention of the Philadelphia Department of Human Services (DHS) when it received a general protective services (GPS) report regarding the Child's family.  N.T., 9/24/18, at 5.  That report alleged that Child's school was helping the family find housing as they were living in a shelter; Father was fired from his job and could not pay his rent and utilities;

_____

*   Retired Senior Judge assigned to the Superior Court.

Father may be using drugs; Child left Father's home; and Child does not want to live in Father's home.[1] *Id.* at 5-6.

DHS investigated the report. During the investigation, Child stated that there was rarely food in the home, that her Father denied her food, and Father informed her that if she did not assist him with paying bills, she would not get food.[2, 3] *Id.* at 7-8. Child also reported Father acted unusually at times. *Id.* at 8. Child recalled that when her mother was alive, Father would hit her mother. *Id.* Because of the issues in Father's home, Child refused to return and was staying with a family friend, A.S., who is a teacher at her school. *Id.* at 10-11. DHS assessed A.S.'s home and found it to be appropriate. *Id.* at 10. Since June 2018, Child lived with A.S. or Child's aunt and was afraid to return home. *Id.* at 12, 17. The assessment also found that Child was not up-to-date with medical, dental or vision appointments. *Id.* at 8.

DHS visited Father's home where he resided with Child's 15-year-old younger brother. *Id.* at 9. In his conversation with DHS, Father reported he was trying to find employment. *Id.* at 4. He also denied all of Child's allegations and suggested that Child had only left for the day. *Id.* at 10. DHS

_____

[1] Child's mother died approximately four years earlier. N.T., 9/24/18, at 6.

[2] Child did not testify at the hearing. The court spoke with Child off the record, later reporting that Child only wanted to know how the case would proceed. *Id.* at 24.

[3] At the time, Child worked at a McDonald's restaurant. *Id.* at 7.

determined that the home was appropriate and had adequate food. *Id.* at 9, 14. Although there were allegations that Father was behind on his rent, DHS found that by September 2018, he was only behind $18.00 and needed to pay a water bill. *Id.* at 9. DHS could not assess the safety of Child's brother because he was in Puerto Rico at the time. *Id.* at 9, 23. The caseworker needed to perform a closing visit to complete her investigation. *Id.* at 23.

On September 10, 2018, DHS filed a dependency petition. On September 24, 2018, the juvenile court conducted the adjudicatory hearing.[4] At the hearing, DHS presented the testimony of DHS social worker Amber Daniels, who testified to the facts set forth above.[5] Father testified on his own behalf. On the same date, the court entered an order adjudicating Child dependent; placing Child in kinship care; referring Father to the Achieving Reunification Center (ARC) for financial counseling, healthy relationships and employment workshops; and ordering Father to allow a Community Umbrella Agency (CUA) into his home to conduct a home assessment and obtain appropriate clearances for all adults residing in Father's home. Order of

---

[4] Father was represented by counsel, and a guardian *ad litem* represented Child's legal interests.

[5] The notes of testimony are somewhat unclear as to the witness for DHS. At the beginning of the hearing, Ms. Daniels identified herself as the DHS social worker, and the hearing transcript identifies DHS's witness as, "DHS SOCIAL WORKER". N.T., 9/24/18, at 2, 4-6. However, DHS also had a court representative, Sheila Overton, present.

Adjudication and Disposition, 9/24/18, at 1-2. On October 10, 2018, Father timely filed a notice of appeal along with a concise statement of errors complained of on appeal.

On appeal, Father challenges the court's determination that Child is dependent. Father's brief at 9-13. Further, Father asserts that the court erred in ordering Father to participate in services and claims that the court improperly required a home assessment and clearances for those residing in his home. *Id.* at 13-14.[6]

## II.

Initially, Father challenges the juvenile court's determination that Child is dependent.[7] The Juvenile Act governs dependency proceedings. *See* 42 Pa.C.S. § 6301–6375. The Act permits a court to adjudicate a child dependent if it finds that he or she meets the requirements of one of ten definitions listed

---

[6] In Father's brief, he disclaims his prior assertion the court impermissibly admitted hearsay testimony, stating, "[Father] will not make any argument based on this issue for appeal, as it appears that the lower [c]ourt did not admit and/or rely on hearsay or other inadmissible evidence in making its decisions." Father's brief at 13.

[7] In dependency proceedings, we review the juvenile court's order pursuant to an abuse of discretion standard of review. *In the Interest of H.K.*, 172 A.3d 71, 74 (Pa. Super. 2017). As such, we must accept the court's findings of fact and credibility determinations if the record supports them, but we need not accept the court's inferences or conclusions of law. *Id.* "'An abuse of discretion is not merely an error of judgment, but is, *inter alia*, a manifestly unreasonable judgment or a misapplication of law.'" *In re A.T.*, 81 A.3d 933, 936 (Pa. Super. 2013) (quoting *In re J.R.*, 875 A.2d 1111, 1114 (Pa. Super. 2005)).

at Section 6302.  The Act defines "dependent child" as follows, in relevant part.

> **"Dependent child."**  A child who:
>
>     (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals.  A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk;
>
> ***

42 Pa.C.S. § 6302.

In **In re G.T.**, 845 A.2d 870 (Pa. Super. 2004), this Court clarified the definition of "dependent child" further.

> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions:  whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

**Id.** at 872 (internal quotations and citations omitted); **see also In re J.C.**, 5 A.3d 284, 289 (Pa. Super. 2010).  Additionally, we note that "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." **In re G.T.**, **supra**.

Father argues the juvenile court erred by adjudicating Child dependent because DHS presented insufficient evidence to support a finding of

- 5 -

dependency, pointing to a lack of testimony about employment, drug or mental health issues. Father notes that Child stated that she was denied food but argues that there was no explanation how this could occur when she works at McDonald's. Father concludes that the "evidence was anything but clear and convincing that there were any dependency issues. Rather, it appears that the child merely simply [sic] did not want to return to her father's care, for reasons uncertain." Father's Brief at 12-13.

The juvenile court determined "Child lacked proper parental care and control based on the evidence presented by the credible testimony of the DHS social worker." Juvenile Court Opinion, 12/18/18, at 5. Further, the court concluded Father's testimony was not credible, as Father merely denied the allegations without presenting any facts. *Id.*

The record supports the court's determination that Child is dependent because the testimony established that Father's economic situation was unstable, Child asserted there was no food in the house, and Father withheld food from Child unless she gave him money. N.T., 9/24/18, at 4, 7-9. Father's actions toward Child made her afraid to come home and she has refused to return to her home for months. *Id.* at 10-12, 17. Moreover, at the time of the hearing, Child's medical, dental and vision examinations were behind. *Id.* at 8.

While Father argues that Child's job makes it unlikely that he could have denied her food, and further notes that the reason Child refuses to return

home is unclear, the testimony presented by DHS, which the court found to be credible, supports its finding of dependency. The credited testimony is sufficient to establish, by clear and convincing evidence, that Child lacks proper parental care and control for her physical, mental or emotional health or morals. Accordingly, we discern no error of law or abuse of discretion in the court's determination that Child is dependent.

## III.

Father also contends that the court erred in requiring Father to attend financial counseling, healthy relationships and employment workshops. Father's brief at 13-14. Father argues as follows:

> As stated above, because the child was not dependent, there was not [a] valid basis for the lower [c]ourt's orders that the father attend the ARC for financial counseling, health[y] relationships and employment workshops. Only when there is clear and convincing evidence of dependency, may the [c]ourt make a disposition for a parent. *In re L.C. II*, 900 A.2d 378, 381 (Pa. Super. 2006). Here, based on the lack of evidence of any issues regarding housing, employment, of an unhealthy relationship, in addition to a lack of dependency issues, there was a lack of clear and convincing evidence for any of these orders.

*Id.*

This Court has explained the juvenile court's ability to issue orders to promote the best interests of dependent children as follows:

> The court has statutory authority to issue orders to protect the interests of dependent children. 42 Pa.C.S.A. § 6351; *Tameka M.*, *supra*, 525 Pa. at 354, 580 A.2d at 753. Such orders must be based on the court's determination of the course that is "best suited to the protection and physical, mental, and moral welfare of the child." 42 Pa.C.S.A. § 6351(a). The court as well as the child welfare agency also must be guided by the purposes of the

Juvenile Act, which include preserving the unity of the family whenever possible and providing "for the care, protection, safety and wholesome mental and physical development of [dependent] children." 42 Pa.C.S.A. § 6351(a). The legal standard is the best interests of the child. **See In re T.R.**, 557 Pa. 99, 731 A.2d 1276, 1285 (1999) (Newman, J., dissenting); **In re Griffin**, 456 Pa.Super. 440, 690 A.2d 1192, 1200 (1997).

\*\*\*

We of course realize that providing a telephone—or a home or a job—to the parent of a child who has been adjudicated dependent would in many cases aid not only the parent but also the dependent child and promote family unity. In recognition of this fact, many services are available to parents to provide assistance and support for their efforts at reunification with their dependent children. Indeed, the Juvenile Act requires that "reasonable efforts" be made to reunify the family once a child has been declared dependent. **See** 42 Pa.C.S.A. §§ 6351(e) & (f). Nonetheless, the focus of the Juvenile Act is the dependent child, not the parent. The statute cannot sustain an interpretation that would allow the court to order parental services that do not directly promote the best interests of the child or that are beyond the statutory standard of "reasonable efforts" to reunify the family.

**In re J.R.**, 875 A.2d 1111, 1117–18 (Pa. Super. 2005).

Initially, for the reasons set forth earlier, we reject Father's contention that Child is not dependent. Additionally, with regard to the services ordered, we conclude that the juvenile court did not abuse its discretion. The testimony supported a finding that Father was looking for a job, was behind on his rent and utility payments, albeit in a small amount, and Child refused to return home because she was afraid. N.T., 9/24/18, at 4, 9, 17. The challenged services related to employment, financial counseling and healthy relationships. These services directly relate to deficiencies identified at the

hearing, and we discern no abuse of discretion with regard to the ordered services.

**IV.**

In Father's final issue, Father argues as follows:

In addition to the fact that there was a lack of clear and convincing evidence of dependency, there was no jurisdictional basis for the lower [c]ourt to order clearances on persons that were not before the court, who may have resided in the father's home, and such order would have violated their Constitutional rights to privacy under the 4th and 14th Amendments to the United States Constitution. Additionally, the social worker testified that she had already assessed the home and that there were no issues in the home, so there was no factual basis for a new home assessment.

Father's brief at 14.

Initially, we consider whether Father has preserved this claim. In his Rule 1925(b) statement, Father asserted: "Did the lower court err by ordering appellant to allow CUA into his home, for a home assessment and to require that everyone in the home submit to clearances, because the child in question is not dependent, and any other children in the home were not before the court?" Rule 1925(b) Statement, 10/10/18, at ¶ 4. This is markedly different from his current argument that the order violates the constitutional rights of others or that an assessment is not necessary because DHS previously completed an assessment. Further, Father's argument is devoid of any development of his purported jurisdictional and constitutional issues. Because the issues Father seeks to raise are not consistent with his Rule 1925(b) statement, and Father fails to develop his argument in any meaningful way,

we find that Father's argument is waived.  ***See Krebs v. United Refining Co. of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues.); ***see also In re W.H.***, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting ***In re A.C.***, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.")

Moreover, even to the extent Father did not waive these issues, they would merit no relief.  With respect to Father's argument regarding the allegedly unconstitutional nature of the clearance requirement, Father asserts the order is an infringement upon the rights of "persons that were not before the court . . . ."  Father's brief at 14.  In addition to failing to develop this argument, Father also fails to argue how he has standing to raise this claim. Father's argument is based upon his assertion that the order infringes upon the constitutional rights of persons who were not before the court.  Father lacks standing to attempt to litigate the unconstitutionality of the order as applied to third parties.  ***See Commonwealth v. Butler***, 291 A.2d 89, 90 (Pa. 1972) (noting "it is settled law that appellant lacks standing to assert the alleged deprivation of another's constitutional rights.").

- 10 -

Further, the court did not abuse its discretion in ordering a home assessment. While Father argues that the testimony established that Father's home was appropriate, the DHS witness also testified that she needed to return to complete her investigation. N.T., 9/24/18, at 23. Accordingly, the court did not abuse its discretion by ordering a further home assessment.

For the foregoing reasons, we affirm the juvenile court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/19