J-S06016-21

2021 PA Super 153

| | | |
|---|---|---|
| IN THE INTEREST OF: N.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: BUCKS COUNTY CHILDREN AND YOUTH SOCIAL SERVICES AGENCY | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2076 EDA 2020 |

Appeal from the Order Entered October 30, 2020
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-DP-0000023-2018

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

OPINION BY NICHOLS, J.: **FILED AUGUST 3, 2021**

Bucks County Children and Youth Social Services (CYS) appeals from the dependency review order regarding N.B. (Child), born in June of 2007, who is the daughter of Q.B. (Father) and Am.B. (Mother) (collectively, Parents), pursuant to 42 Pa.C.S. § 6351 of the Juvenile Act.[1]  CYS contends that the trial court erred by requiring it to acquire and pay for the costs of a Soberlink alcohol monitoring device[2] for Father and by striking a provision in

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 6301-6365.

[2] As described by the trial court,

> Soberlink is an alcohol monitoring system used in several courts to monitor a person's sobriety at any time and in almost any location.  A person blows into the device, and the device measures a person's blood alcohol concentration (BAC).  The Soberlink device has facial-recognition technology to ensure the person blowing into the breathalyzer is the intended individual.  Once Soberlink measures the person's BAC, results are electronically

*(Footnote Continued Next Page)*

the order at issue requiring Father to pay for the Soberlink costs once he secures employment. We affirm.[3]

On January 19, 2018, CYS filed a dependency petition regarding N.B., which it subsequently amended on March 1, 2018. After an adjudicatory and dispositional hearing on March 1, 2018, the trial court entered an order of adjudication and disposition finding Child dependent pursuant to 42 Pa.C.S. § 6302(1), because Parents were abusing, among other things, methamphetamine and alcohol. Thereafter, on March 2, 2018, the trial court entered an amended order of adjudication and disposition. On March 6, 2018, the trial court appointed a guardian *ad litem* (GAL) for Child, and, on June 13, 2018, the trial court appointed legal counsel for Child. A series of permanency

---

sent to designated recipients. The Soberlink website states daily testing plans cost between $149 and $249 per month. In the family law arena, Soberlink is used to ensure a custodial parent with a history of alcohol abuse is sober when supervising the children.

Trial Ct. Op., 12/2/20, at 2 (formatting altered).

[3] This case had a companion case, **In the Interest of A.B.**, No. CP-09-DP-24-2018, involving Child's dependent, female sibling, A.B. (born in December of 2005) (we refer to N.B. and A.B. collectively as Children), in which CYS also filed an appeal.

On March 2, 2021, CYS filed a motion to discontinue the appeal at docket number 2077 EDA 2020, stating that on February 5, 2021, the trial court entered an order that terminated CYS supervision over A.B., and closed that case, and, thus, the appeal was moot. We discontinued the appeal regarding A.B. on March 26, 2021. Therefore, as the appeal at docket number 2077 EDA 2020 has been discontinued and closed, the two appeals are no longer consolidated, and only 2076 EDA 2020 remains for disposition herein.

review hearings and hearings regarding modifications to Child's placement and orders thereon followed.[4]

On October 14, 2020, the trial court held a status review hearing regarding CYS's most recent petitions for permanency review and modification of Child's placement, at which CYS, through its counsel, Brad M. Jackman, Esq. (CYS's Counsel), presented the testimony of its social worker, Ms. Lee Wiggins. At the hearing, Sarah Tucker, Esq., represented Child as her GAL, and Christine McMonagle, Esq., represented Child as her legal interest counsel. Francine W. Kaplan, Esq., represented Father, who testified that alcohol was his "biggest problem," but that he has been "alcohol free for about two months now."[5] N.T., 10/14/20, at 5. The trial court construed Father's testimony as the "largest hurdle in reunifying [Child] with" Parents. Trial Ct. Op. at 1-2.

The trial court then ordered Father to get Soberlink and "test[ himself] four times a day. It's a machine that [CYS] will purchase for the purpose of the test." N.T., 10/14/20, at 6-7 (formatting altered). The trial court estimated that the cost of Soberlink would be approximately $400, and the monthly monitoring fee would be approximately $200 per month.[6] *Id.* at 8.

---

[4] It does not appear that Parents and Child were close to reunification.

[5] Attorney Jennifer Pierce, Esq., represented Mother.

[6] Meanwhile, the trial court had explained the Soberlink device to Father. N.T., 10/14/20, at 6-8.

The following exchange then occurred between CYS's Counsel and the trial court:

>[CYS's Counsel]: Your Honor, you're directing [CYS] to pay for the monthly [Soberlink] fee as well?
>
>THE COURT: Father's laid off and unemployed, so yes. **At some point in time when [Father] gets employment, he will take over responsibility for it.**
>
>[CYS's Counsel]: **Understood.**
>
>THE COURT: That's the reason. If [CYS], when [Father] gets a job, wants to put him on a payment plan to reimburse them, that's fine, too. I want to start it. Do you understand, [Father]?
>
>[FATHER]: Yes, sir.
>
>THE COURT: Is that going to present any issues for you?
>
>[FATHER]: No.
>
>THE COURT: If you fail, it will present some issues for me.
>
>I believe you have a contract -- last I knew they required a two-month contract for the tests, an agreement that you would do it -- you don't pay for the number of tests because they don't care. You pay by the contract.
>
>So you will do this for at least two or three months, and we'll get every one of those tests instantaneously.
>
>If [CYS] sees a pattern they don't like, they can always file immediately for whatever it is you wish to seek. But this has been proven in Family Court, Criminal Court and other courts around the country as an effective way to keeping [sic] track of clients who are difficult clients or want to be tracked to make sure they maintain their sobriety. . . .

*Id.* at 8-10 (emphases added). CYS did not object.

- 4 -

Following the Soberlink discussion, the court heard testimony from Child and Ms. Wiggins. *See id.* at 15-34. When the trial court asked if "[a]nybody else [had] anything to add" at the end of the hearing, CYS's Counsel did not raise any objections. *Id.* at 33.

Although not memorialized at the hearing or in the record, the trial court apparently ordered CYS to prepare a written order for the trial court to sign. At some point in time, CYS submitted a proposed written order, which included the following statement: "Once [Father] secures employment, he shall be responsible for all costs." Order, 10/30/20. CYS's proposed order also stated that the written order "confirms the verbal order entered in court on 10-14-20." *Id.* at 2 (formatting altered).

On October 30, 2020, the trial court entered an order that directed CYS to pay for the costs "of acquiring and monitoring" a Soberlink alcohol monitoring device for Father.[7] *Id.* at 1. However, the trial court struck the statement providing that Father would be responsible for the costs associated with the alcohol monitoring device after he secured employment. *Id.* The order also instructed Parents to be drug-tested on twenty-four hours' notice and did not otherwise reference any other costs. *Id.*

On November 10, 2020, CYS filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On January 29, 2021, Parents filed a motion to quash

_____

[7] There were no other references to costs in the order.

CYS's appeal with this Court, which was subsequently deferred to this panel for disposition.

On appeal, CYS raises the following issues:

1. Did the [trial] court err and abuse its discretion by directing [CYS] to obtain and maintain an alcohol monitoring device for [Father]?

2. Did the [trial] court err and abuse its discretion by failing to include in its written order a provision made in its verbal order in court and on the record?

CYS's Brief at 4.

CYS objects to the trial court's *sua sponte* decision to order Soberlink for Father, because (1) the record does not establish Father required such a device, and (2) CYS should not have to pay for it for various reasons. **Id.** at 11-12. CYS suggests it was caught off-guard by the trial court's decision and therefore had no opportunity to propose alternatives to Soberlink to the trial court. **Id.** at 13. CYS also states that the trial court erred by not correcting CYS's proposed written order with accurate language reflecting the trial court's verbal order regarding when Father could assume payment for the Soberlink device. **Id.** at 14.

### Parents' Motion to Quash

Initially, we must address Parents' motion to quash. Parents argue that CYS's appeal is based on an interlocutory order that is not otherwise

appealable.[8]  In support of their claim, Parents cite *In the Interest of J.M.*, 219 A.3d 645 (Pa. Super. 2019).

"Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary." *J.M.*, 219 A.3d at 650 (citation and quotation marks omitted).  "In order to be appealable, the order must be: (1) a final order, Pa.R.A.P. 341-42; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S. § 702(a)-(b); Pa.R.A.P. 311-12; or (3) a collateral order, Pa.R.A.P. 313." *Id.* (footnote omitted).

Moreover,

[t]he collateral order doctrine exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the

---

[8] Parents' motion to quash raises two additional grounds for "quashing" CYS's appeal: (1) CYS's brief and reproduced record do not conform to numerous rules of the Pennsylvania Rules of Appellate Procedure, and (2) CYS failed to preserve the issues on appeal.  Parents' Brief at 12-23.

Our jurisprudence has not always been clear as to the grounds for quashing an appeal.  "An appeal is 'quashed' when the court lacks jurisdiction over the appeal in the first instance.  When the appellant has failed to preserve issues for appeal, the issues are waived, and the lower court's order is more properly 'affirmed.'" *In the Interest of K.L.S.*, 934 A.2d 1244, 1246 n.3 (Pa. 2007) (citations omitted).  Similarly, an appellant's violations of the Rules of Appellate Procedure may result in waiver of the issue.  *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 687-88 (Pa. Super. 1994).  Therefore, Parents' remaining two arguments are more properly framed as arguments for waiver and not arguments for quashing the appeal.  We address Parents' waiver arguments below.

question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.

*Id.* at 655 (citations omitted and formatting altered).[9]

In *In re J.R.*, 875 A.2d 1111 (Pa. Super. 2005), the Philadelphia Department of Human Services (DHS) appealed from an order that directed DHS to provide home telephone service to the dependent child's father. *J.R.*, 875 A.2d at 1114. The child's father was required to call DHS and confirm in advance his attendance for supervised visits with the child. *Id.* at 1113. If the father did not call DHS in advance, DHS would cancel the father's visits. *Id.* After DHS informed the trial court that Father did not own a telephone, the trial court *sua sponte* ordered DHS to provide Father with home telephone service so that he could make the requisite attendance calls. *Id.* DHS objected and suggested alternatives that the trial court did not entertain. *Id.* DHS filed a post-trial motion for reconsideration, which the trial court denied, and DHS appealed. *Id.*

In resolving the appealability of the trial court's order, the *J.R.* Court held that the interlocutory order was appealable under the collateral order doctrine for the following reasons:

First, the order for telephone service is separable from and collateral to the main cause of action, which is the dependency determination and disposition. Second, the right involved is DHS's discretion to determine allocation of limited resources. This is a

---

[9] The *J.M.* Court addressed whether an order prohibiting visits at the mother's home was an appealable order. *J.M.*, 219 A.3d at 649-50. The *J.M.* Court quashed the appeal because the order was not a final order or a collateral order. *Id.* at 649, 661.

right too important to be denied review. Third, if review is postponed and DHS ultimately prevails, it is unlikely that the agency will be able to recoup the funds paid out pursuant to the court order.

*Id.* at 1114 (citations omitted). Thus, the Court held that the order was appealable under the collateral order doctrine, and we had jurisdiction to review the merits of the appeal. *Id.*

Based on the foregoing, we agree with Parents that the order on appeal is not a final order or an interlocutory order appealable by right or permission. 42 Pa.C.S. § 702(a), (b); Pa.R.A.P. 311-312, 341; *see generally J.M.*, 219 A.3d at 650-55. However, the instant order instructing CYS to pay for Soberlink is similar to the *J.R.* order instructing DHS to pay for home telephone service. *Cf. J.R.*, 875 A.2d at 1113-14. Like the *J.R.* Court, we find that (1) the order at issue is separable from and collateral to the main cause of action, *i.e.*, Child's dependency and disposition; (2) the right involved is CYS's "discretion to determine allocation of limited resources," *i.e.*, paying for Father's Soberlink monitoring device and the costs of monitoring Father's alcohol usage with that device; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost, *i.e.*, CYS will have already paid for the acquisition of the device and the monitoring and will be unlikely to recoup the funds from Father. *Cf. id.* For these reasons, we conclude that the order appealed from is an appealable collateral order. *See id.* Therefore, we deny Parents' motion to quash.

**Parents' Waiver Claims**

Parents also argue that we should affirm the trial court's ruling because CYS filed a brief that contained numerous violations of the Pennsylvania Rules of Appellate Procedure, including Rule 2119. Parents' Brief at 12-13. Because CYS's violations do not substantially impede appellate review, we decline to find waiver. **See In re Ullman**, 995 A.2d 1207, 1211-12 (Pa. Super. 2010) (declining to find waiver because the court was able to identify claim in the brief). For example, CYS's failure to cite to the record does not impair our review.[10] **See** Pa.R.A.P. 2119(c). Therefore, we will address the merits of CYS's claims.

**CYS's Claim – Cost for Soberlink**

CYS argues that the trial court abused its discretion by ordering CYS to obtain and maintain a Soberlink device for Father. CYS's Brief at 8. In support, CYS argues that requiring it to pay for the Soberlink device was inappropriate because (1) CYS has limited funds; (2) Soberlink was not a necessary expense related to protecting Child; and (3) the record did not establish that Father needed Soberlink to maintain his sobriety. **Id.** at 8-10. CYS also argues that the trial court's order was *sua sponte* in nature and that, although CYS did not object to this requirement at the dependency hearing,

> [t]he fundamental flaw of [the trial court's ruling] is that, as noted above, the [trial] court's mandate of [CYS] funded [Soberlink] monitoring came like a bolt out of the blue. Such proposition had

---

[10] We do not approve of CYS's violations. **See Commonwealth v. Briggs**, 12 A.3d 291, 343 (Pa. 2011).

- 10 -

not been proposed by the court nor by the any of the parties. When the lower court issued such direction, [CYS] was left flat footed and dumbfounded. There simply was no opportunity to consider and present other alternatives.

There is nothing in the record as to the purpose of the mandate to permit the Appellant to think about other options. The first time that [CYS] was able to understand why the [trial] court did what it did was when the [trial] court judge issued his opinion.

*Id.* at 13.

In response, Parents assert that "there was no attempt [by CYS] to preserve the issue[s] on appeal" regarding payments for Soberlink at the October 14, 2020 hearing. Parents' Brief at 16. Parents emphasize that instead of objecting, CYS's Counsel answered that he "understood" the trial court's directive that CYS would pay for the monthly Soberlink fee. *Id.* at 17. Further, Parents challenge the assertions made by CYS that the trial court's ruling "left [it] flat footed and dumbfounded," arguing that "[i]f that becomes a valid excuse for a failure to object, the contemporaneous objection rule will lose all its teeth." *Id.*

It is well settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In *In the Interest of L.V.*, 209 A.3d 399 (Pa. Super. 2019), this Court found the mother of a dependent child waived one of her issues for the following reasons:[11]

---

[11] In *L.V.*, the mother contended the trial court erred by delaying the scheduling of the dependency hearing. *L.V.*, 209 A.3d at 418.

In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

209 A.3d at 418 (citation omitted and formatting altered); *see also In re A.W.*, 187 A.3d 247, 252-53 (Pa. Super. 2018) (holding that because the parents' counsel failed to timely object before the trial court, the parents waived their issue that the trial court violated their right to due process because, among other reasons, "the juvenile court's interruptions made it impossible [for the parents'] counsel to 'make any argument which the court would entertain'" (formatting altered)).

With respect to the requirement for a contemporaneous objection, our Supreme Court has explained:

Appellate court consideration of issues not raised in the trial court results in the trial becoming merely a dress rehearsal. This process removes the professional necessity for trial counsel to be prepared to litigate the case fully at trial and to create a record adequate for appellate review. The ill-prepared advocate's hope is that an appellate court will come to his aid after the fact and afford him relief despite his failure at trial to object to an alleged error. The diligent and prepared trial lawyer—and his client—are penalized when an entire case is retried because an appellate court reverses on the basis of an error opposing counsel failed to call to the trial court's attention.

*Dilliplaine v. Lehigh Valley Tr. Co.*, 322 A.2d 114, 116 (Pa. 1974).

Here, at the October 14, 2020 hearing, CYS did not object when the trial court ordered Soberlink and stated that CYS would purchase the Soberlink device for Father. *See* N.T., 10/14/20, at 6-7. Moreover, CYS did not object when the trial court explained Soberlink to Father. *See id.* at 7-8. CYS's Counsel then questioned the trial court as to whether CYS would pay for Soberlink. The court estimated an initial cost of $400, along with the monthly monitoring fee, which the court approximated as $200 per month. *See id.* at 8. When the trial court stated that Father would take over responsibility for paying the costs when he "gets employment[,]" CYS's Counsel acknowledged that he understood the court's directive. *Id.* at 9. Subsequently, the hearing continued as the trial court heard testimony from Ms. Wiggins and Child, without any objection by CYS regarding Soberlink. *See id.* at 15-34. At the end of the hearing, the trial court asked the parties if "[a]nybody else [had] anything to add" and CYS's Counsel did not respond or object. *Id.* at 33.

Under these circumstances, we are constrained to conclude that CYS failed to properly preserve its challenge to the provision requiring CYS to pay for the acquisition and monitoring of Father's Soberlink. Further, the CYS argument that it "was left flat footed and dumbfounded," is not an excuse under Pennsylvania jurisprudence governing issue preservation and should have prompted counsel to object for the record. *See Dilliplaine*, 322 A.2d at 116. Therefore, CYS waived this issue and, accordingly, no relief is due. *See* Pa.R.A.P. 302(a); *L.V.*, 209 A.3d at 418; *A.W.*, 187 A.3d at 252-53; *see generally Dilliplaine*, 322 A.2d at 116.

- 13 -

### **CYS's Claim – Stricken Provision**

In support of its second issue, CYS argues:

The [trial] court also addressed its striking of a provision in the proposed order submitted to the court after the entry of the verbal orders. It suggested that the language of the order did not precisely dovetail the language of the verbal order. If the [trial] court believed that the proffered provision was slightly inaccurate, the [trial] court could have easily put the language in that it believed to be accurate. The [trial] court failed to do so, which was error on its part.

CYS's Brief at 13-14 (formatting altered).

Before addressing the merits of this claim, we must examine whether CYS preserved this issue for review. *See* Pa.R.A.P. 302(a). We note that CYS could not have objected to the trial court's striking of the challenged provision until it saw the signed order. *See* Order, 10/30/20, at 1. Upon receiving the signed order, however, CYS's Counsel should have called the trial court's attention to the alleged error in the order so that the trial court could have had the opportunity to correct the alleged error. *See Dilliplaine*, 322 A.2d at 116; *L.V.*, 209 A.3d at 418. Because CYS's Counsel failed to do so, CYS has waived this issue for appellate review. *See* Pa.R.A.P. 302(a).

In any event, even if CYS had preserved this claim for review, CYS would not be entitled to relief. In reviewing an order in a dependency matter, our standard of review requires us "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or

J-S06016-21

conclusions of law. Accordingly, we review for an abuse of discretion." ***In re***

***R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).

Here, the trial court addressed CYS's claim as follows:

The trial court signed a [CYS]-prepared order. The reason for this court's strike of part of [CYS's] proposed order was because the [CYS]-prepared order did not accurately encapsulate this court's verbal order. During the hearing, this court stated, "At some point in time when [Father] gets employment, he will take over responsibility for the Soberlink payments." This court never stated Father will assume Soberlink payments the moment he attains some form of employment; the verbal order only stated "**at some point in time**" after Father attained employment. The reasoning behind this is predictable—Father's employment does not necessarily mean he can afford the Soberlink device. Instead, this court will make a fact-specific determination in deciding whether Father has the means to pay for the Soberlink device.

Trial Ct. Op. at 6 (emphasis in original, footnotes omitted, some formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court. ***See R.J.T.***, 9 A.3d at 1190. The CYS written order did not reflect the condition that Father would resume responsibility "at some point in time." ***See*** Order, 10/30/20, at 1; N.T., 10/14/20, at 9. Instead, the written order stated that Father would assume responsibility for the Soberlink payments as soon as he regained employment, which differed from the terms stated by the trial court at the initial hearing. ***See*** Order, 10/30/20, at 1; N.T., 10/14/20, at 9. Therefore, we discern no abuse of discretion by the trial

- 15 -

court in striking that directive.  ***See R.J.T.***, 9 A.3d at 1190.  Accordingly, even if properly preserved, CYS would not be entitled to relief on this issue.[12]

For these reasons, we deny Parents' motion to quash and affirm the trial court's October 30, 2020 order.

Motion to quash appeal denied.  Order affirmed.

President Judge Panella joins the opinion.

Judge Pellegrini concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/3/2021

---

[12] We add that nothing in this decision or the trial court's October 30, 2020 order prevents CYS from filing an appropriate motion with the trial court to end CYS's payment for Soberlink or to request that Father assume responsibility for payment.