J-S10001-18

2018 PA Super 118

| IN THE INTEREST OF: A.W., JR., | : | IN THE SUPERIOR COURT OF |
| S.W., J.W., AND M.W.,: MINOR | : | PENNSYLVANIA |
| CHILDREN | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.W., SR., FATHER, | : | |
| AND T.A., MOTHER | : | |
| | : | |
| | : | No. 328 EDA 2017 |

Appeal from the Order Entered December 14, 2016
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0001428-2016,
CP-51-DP-0001513-2016, CP-51-DP-0001514-2016,
CP-51-DP-0001515-2016, FID# 51-FN-001537-2016

BEFORE: BOWES, J., OLSON, J., and NICHOLS, J.

OPINION BY BOWES, J.:                                    **FILED MAY 04, 2018**

A.W., Sr. ("Father") and T.A. ("Mother") (collectively, "Parents") appeal from the order entered on December 14, 2016, wherein the juvenile court directed the Philadelphia Department of Human Services ("DHS") to fully vaccinate and immunize Parents' four minor sons: S.W., A.W., Jr., J.W., and M.W. We affirm.

The juvenile court summarized the relevant factual history of this case as follows.

> On July 9, 2016[,] DHS received a Child Protective Services (CPS) report alleging that A.W.[, Jr., born August 2010,] was hospitalized at the Children's Hospital of Philadelphia (CHOP) and was diagnosed with a rare form of epilepsy named, "Refractory Epilepsy." The family was visiting an unidentified person in Lehigh County when A.W.[, Jr.] had a seizure and was transported to a hospital in Lehigh County and [then] transferred to CHOP. Mother refused medical treatment for A.W.[, Jr.] because she believed the anti-seizure medication prescribed to A.W.[, Jr.] was

increasing his seizures.  Mother attempted to remove A.W.[, Jr.] from CHOP.  CHOP staff would not allow Mother to remove A.W.[, Jr.] as it would have endangered A.W.[, Jr.]'s life not to receive the prescribed medication.  The report stated A.W.[, Jr.] resided in the state of Delaware.  The report stated the family had an open case in Lehigh County Children and Youth Services (CYS).

On July 10, 2016, D[H]S received a supplemental report alleging that A.W.[, Jr.] was having increased seizure activity.  CYS previously had physical custody of A.W.[, Jr.] and returned physical custody to Mother on July 5, 2016[,] to make medical decisions for A.W.[, Jr.].  Mother continued to refuse treatment on the evening of July 9, 2016[,] as A.W.[, Jr.] suffered increased seizures.  The report further stated that if Mother continued to refuse medical care for A.W.[, Jr.], he would suffer either neurological damages or sudden death.  The report stated between the evening of July 9, 2016[,] and the morning of July 10, 2016, A.W.[, Jr.] experienced at least 42 seizures.  As a result of the 42 seizures, A.W.[, Jr.]'s medical status had deteriorated.  A.W.[, Jr.] was moved to the Pediatric Intensive Care Unit (PIC) and was intubated.

Juvenile Court Opinion, 11/1/17, at 1-2.

On July 10, 2016, DHS obtained an Order of Protective Custody ("OPC") for A.W., Jr.  Approximately one week later, DHS filed a dependency petition, and a hearing was held on July 19, 2016.  At the hearing, the court discovered that A.W., Jr., had three other siblings who were in need of medical treatment.  Specifically, it was noted that A.W., Jr.'s, siblings had extensive dental issues.  At the conclusion of the hearing, the juvenile court adjudicated A.W., Jr., dependent pursuant to 42 Pa.C.S. § 6302(1) and ordered that DHS investigate the condition of A.W., Jr.'s, siblings.

DHS immediately obtained protective custody of S.W., J.W., and M.W., who were born October 2007, December 2010, and January 2013

respectively.[1] DHS filed a dependency petition on July 29, 2016, and following a hearing, the juvenile court adjudicated S.W., J.W., and M.W. dependent.

On December 14, 2016, the juvenile court held a permanency review hearing, wherein it ordered S.W., A.W., Jr., J.W., and M.W. to be fully vaccinated and immunized to ensure their day-to-day medical needs. Parents objected to the vaccinations, noting that they preferred their children to be treated through natural modalities, such as marijuana. That same day, the juvenile court held a hearing on the matter to allow Parents to state their opposition to the vaccinations on the record. At the hearing, DHS presented the testimony of Peaches Mulba, the caseworker assigned to the family, and Laura Simon, M.D., A.W., Jr.'s, attending physician and an expert in pediatrics. Parents did not present any testimony; however, counsel summarized their opposition on the record: "[My] clients believe that the interference with the immune system is unnatural and it's not well understood and not tested for long term safety. And that's a moral and philosophical reason not to have an immunization." N.T., 12/14/16, at 10.

Ms. Mulba testified regarding her conversations with Mother about vaccinating the children, and specifically, A.W., Jr. She stated, "Mom said that she wasn't going to get – they wasn't going to get vaccination to [A.W., Jr.] because that is one of the reasons that keeps him in the hospital and this [way] they can be with him." N.T., 12/14/16, at 18. On cross-examination,

---

[1] The record appears to contain an error regarding the birthdates of A.W., Jr. and J.W.

- 3 -

Ms. Mulba elaborated, "Mom said that the vaccination wasn't good for the children. It's just not good for the immune system[, and] because of that they wasn't prone to sign for vaccinations for any of [the children]." *Id*. at 19.

Dr. Simon testified to her opinion that immunizations are generally accepted as safe and effective, with minimal risk. N.T., 12/14/16, at 34. Likewise, Dr. Simon noted that she recommends immunizations to all of her patients. *Id*. Dr. Simon expressed concern that there are a large number of vaccine-preventable diseases that can cause chronic illness, disability or death. *Id*. As it relates to A.W., Jr., Dr. Simon explained that because of A.W., Jr.'s increased risk of disability due to his seizures, she recommended that A.W., Jr., be fully immunized. *Id*. at 38, 41. Dr. Simon testified that as A.W., Jr., approaches school-age, his risk of contracting a vaccine-preventable disease increases as he attends daycare or school. *Id*. at 41.

Moreover, Dr. Simon also recommended that S.W., J.W., and M.W. be fully vaccinated. Like with A.W., Jr., Dr. Simon explained that the other children, if left unvaccinated, would be at a higher risk of contracting vaccine-preventable diseases and could suffer from more severe reactions or illnesses if they were to contract a disease. *Id*. at 42. Further, Dr. Simon cautioned the court that if any of A.W., Jr.'s, siblings were to contract a vaccine-preventable disease, it would put A.W., Jr., at great risk for contracting the disease himself. *Id*.

Finally, during closing argument, the Child Advocate observed that the children have been getting sick more often since they entered foster care and began attending school.[2]   N.T., 12/14/16, at 68.   Notably, M.W. was hospitalized after he contracted the flu and required "multiple interventions" to stabilize.   DHS Exhibit 4.   M.W.'s physician at CHOP stated that M.W.'s "illness and hospitalization may have been prevented had he received the . . . recommended vaccines."   *Id*.

At the conclusion of the hearing, the juvenile court delivered its decision from the bench, ordering that all four children receive updated immunizations and vaccinations.  It entered the written order on the same date.  Permanency Review Order, 12/14/16.  Parents timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(1)(i).[3]   The juvenile court issued its opinion pursuant to Pa.R.A.P. 1925(a)(1)(ii).

_____

[2] The children were previously home-schooled.

[3] Simultaneously with their notice of appeal, Parents filed an application to stay the December 14, 2016 order pending the outcome of the appeal.  On January 31, 2017, this Court granted the application on a temporary basis and ordered DHS to file an answer by February 10, 2017.  DHS failed to file a response, and, on February 13, 2017, this Court issued an order granting the application for stay.   Thereafter, on February 15, 2017, DHS filed an application for relief, requesting leave to file a response to the application *nunc pro tunc*.  In addition, DHS filed a motion to vacate the order granting the stay and to reinstate the temporary stay.  We granted DHS's requests on March 6, 2017, and the following day, DHS filed its response to the application. On March 17, 2017, this Court denied Parents' application for stay, effectively

Parents present the following issues for our review.

1. Did the [juvenile] court . . . err in [o]rdering as follows: "Court orders for the child to be fully immunized forthwith. Court orders for the child to receive all vaccinations forthwith", without a proper factual and legal basis being established at the hearing of this matter . . . ?

2. [Was the juvenile] court [order] . . . contrary to the laws of the Commonwealth of Pennsylvania and of the United States of America, and in violation of Constitutions of the Commonwealth of Pennsylvania and of the United States of America?

3. Did the [juvenile] court . . . err in denying Due Process of Law to [Father and Mother], as guaranteed by the Constitutions of the Commonwealth of Pennsylvania and of the United States of America?

Appellants' brief at 4.[4]

We review the juvenile court's order for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). As such, we must accept the court's findings of fact and credibility determinations if the record supports them, but we need not accept the court's inferences or conclusions of law. *Id*. "When

_____

lifting the temporary stay. The certified record does not reveal whether DHS proceeded with the vaccinations once the temporary stay was lifted.

[4] The procedural posture of this appeal begs the question whether the issues pending before us are moot in that, once the children have received their immunizations, our decision in this appeal would lack legal force or effect. Nevertheless, mindful of the time constraints involved with reviewing issues regarding medical treatment, we believe that the question presented in this case is capable of repetition and apt to elude appellate review. Hence, to the extent that the matter may technically be moot, we address it as an exception to the mootness doctrine. *See Ferko–Fox v. Fox*, 68 A.3d 917, 920 (Pa.Super. 2013) (three recognized exceptions to mootness "1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.").

the trial court's findings are supported by competent evidence of record, we will affirm, 'even if the record could also support an opposite result.'" ***In Interest of R.W.***, 169 A.3d 129, 134 (Pa.Super. 2017) (quoting ***In re R.M.G.***, 997 A.2d 339, 345 (Pa.Super. 2010), *appeal denied*, 12 A.3d 372 (Pa. 2010)).

Parents argue that the juvenile court erred by authorizing DHS to vaccinate and immunize their children in opposition to their moral beliefs. Parents' brief at 11. They contend that the court's decision violated their constitutional rights to withhold immunizations based upon religious or moral grounds. ***Id***. at 18-21. Parents also baldly assert that the juvenile court violated their right to due process by denying them an adequate and meaningful hearing. ***Id***. at 15, 21-23. Neither position is persuasive.

Dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301–6375. The health, safety and welfare of a child involved in juvenile court proceedings are among the foremost considerations contemplated by the Juvenile Act. ***See*** 42 Pa.C.S. § 6301(b)(1.1) (identifying one of the purposes of the Juvenile Act is "[t]o provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter"). Accordingly, the Juvenile Act gives the legal custodian of a child "the right to determine the nature of the care and treatment of the child, including ordinary medical care and the right and duty to provide for the care, protection, training, and education, and the physical, mental, and moral welfare of the child." 42 Pa.C.S. § 6357.

If the child's parent, guardian, or custodian will not consent to the child's receipt of medical treatment, the juvenile court "may order the child to be examined at a suitable place by a physician or psychologist and may also order medical or surgical treatment of a child who is suffering from a serious physical condition or illness which in the opinion of a licensed physician requires prompt treatment[.]" 42 Pa.C.S. § 6339(b). The juvenile court may enter this order "even if the parent, guardian, or other custodian has not been given notice of a hearing, is not available, or without good cause[,] informs the court of his refusal to consent to the treatment." *Id*.

Similarly, the Juvenile Act identifies who may make medical decisions on a dependent child's behalf. Section 6351(a)(2) limits the transfer of temporary legal custody of an adjudicated child to:

> (i) Any individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.
>
> **(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.**
>
> (iii) A public agency authorized by law to receive and provide care for the child.

42 Pa.C.S. § 6351(a)(2) (emphasis added). Pursuant to this section, DHS qualifies as an entity to which the juvenile court may transfer temporary or permanent legal custody, and one who is authorized to make medical decisions on behalf of S.W., A.W., Jr., J.W., and M.W. Therefore, under the

Juvenile Act, the juvenile court properly directed DHS to fully vaccinate and immunize S.W., A.W., Jr., J.W., and M.W. in light of the medical opinion of Dr. Simon.

Likewise, § 3130.91 of the Public Welfare Code permits DHS to make all "routine" medical decisions for a child in its legal custody. 55 Pa. Code § 3130.91(2)(i). "Examples of routine treatment include well baby visits, **immunizations** and treatment for ordinary illnesses." 55 Pa. Code § 3130.91(1)(i) (emphasis added). Thus, while DHS typically must obtain the consent of either the child's parent or the juvenile court prior to the child undergoing non-routine treatment, the agency is authorized to order routine treatments, including immunizations. *See In re J.A.*, 107 A.3d 799, 819-20 (Pa.Super. 2015) (explaining medical authority granted to child service agencies under Public Welfare Code).

Instantly, the juvenile court determined that routine medical treatment was warranted in the form of updated vaccinations and immunizations. At the conclusion of the hearing, the juvenile court declared:

> [a]s long as these children remain in care and DHS has the sole responsibility of keeping these children safe[,] I think part of that is ensuring that they meet their day-to-day medical needs and I do not believe that without immunizations that's going to be done.
>
> . . .
>
> So, with all that in mind[,] I believe that it's in the best interest of the children to be vaccinated. I'm going to order vaccinations for all children. I will do so over the objection of parents[.] . . . But as long as these children are in care[,] I think that it's necessary and because DHS is also still responsible for placement. [A.W.,

- 9 -

Jr.] is ready for discharge [from CHOP], and if part of the difficulty . . . in finding him a placement [resource] is that he's not immunized given . . . his medical history[,] I believe that it's prudent to do so.

N.T., 12/14/16, at 79-80. The juvenile court's decision was a reasonable exercise of discretion, as authorized by the salient statutory provisions addressing routine medical treatment.

As outlined *supra*, the Public Welfare Code, as well as the Juvenile Act, empowers DHS to make all routine medical decisions for a dependent child. The record establishes that S.W., A.W., Jr., J.W., and M.W. are at risk without the additional medical monitoring and treatment that Parents oppose. Parents will not consent to the administration of vaccinations. Instead, they prefer to treat their children with natural therapies, including marijuana. Recall that, despite being advised by physicians that their continued refusal to treat A.W., Jr.'s seizure disorder could cause neurological damage or sudden death, Parents initially declined treatment for their son. That delay caused the child's condition to deteriorate to the point where he had to be transferred to the intensive care unit and intubated. Indeed, Parents' obstinacy during that episode is the genesis of the adjudications of dependency that empowered DHS to make the instant medical decisions on behalf of A.W., Jr., and his siblings. Stated plainly, by routinely elevating their moral beliefs above their children's medical needs, Parents ignore the risks their children face without proper monitoring and treatment. As such, the juvenile court was justified in concluding that it was necessary to vaccinate and immunize S.W., A.W., Jr.,

J.W., and M.W. in order to provide for their continued care, protection, and physical welfare. 42 Pa.C.S. § 6357.

Moreover, we also reject Parents' assertion that the juvenile court denied them due process of law because the hearing was not "adequate and meaningful." Appellants' brief at 13. Parents complain that the juvenile court gave a "sermon regarding 'disrespect,'" thereby obstructing Parents from giving a closing argument. *Id*. Parents also contend that the juvenile court's interruptions made it impossible for counsel to "make any argument which the court would entertain." *Id*. at 15.

Our law is clear that,

> [i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction . . . one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*Hong v. Pelagatti*, 765 A.2d 1117, 1123 (Pa.Super. 2000).

Because counsel did not interpose a timely and specific objection on the foregoing basis, Parents' current argument is waived. *See* Pa.R.A.P. 302; ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Moreover, our review of the certified record does not support Parents' recitation of events. Instead, it reveals that Parents were

- 11 -

able to make a closing argument. In fact, before the juvenile court stated its findings on the record, it asked counsel if there was anything else she would like to state. N.T., 12/14/16, at 76. Counsel responded in the negative. ***Id***.

For all of the foregoing reasons, the juvenile court did not err in ordering DHS to ensure that S.W., A.W., Jr., J.W., and M.W. receive full and updated vaccinations and immunizations.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/18