J-A19041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANKLIN LAMAR BUTLER | : | |
| | : | |
| Appellant | : | No. 1265 EDA 2017 |

Appeal from the Judgment of Sentence September 27, 2016
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0009354-2014

BEFORE: PANELLA, P.J., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED NOVEMBER 13, 2019**

Appellant, Franklin Lamar Butler, appeals from the judgment of sentence entered in the Court of Common Pleas of Montgomery County after the court, sitting as finder of fact in Appellant's stipulated bench trial, found him guilty of one count each of aggravated assault, recklessly endangering another person, discharge of a firearm into occupied structure, person not to possess a firearm, and receiving stolen property. Sentenced to an aggregate sentence of 15 to 30 years' incarceration, Appellant denies that he voluntarily waived his rights to a jury trial and to present evidence in his own defense, and he claims a violation of his due process rights flowed from the court's refusal to permit his testimony during the stipulated trial. We affirm.

The trial court aptly provides the relevant facts and procedural history, as follows:

_____

* Former Justice specially assigned to the Superior Court.

At approximately 8:33 p.m. on Monday, November 3, 2014, Norristown police officers responded to a dispatch of multiple shots fired at 624 West Lafayette Street in Norristown, Montgomery County. (Stipulated Bench Trial ("N.T."), 6/28/16, Commonwealth Exhibit C-1 Affidavit of Probable Cause). The occupants of Apartment 1 at 624 West Lafayette Street met the officers and stated that it was Appellant who had fired multiple shots from the black semiautomatic handgun into the side window of the apartment, narrowly missing an eight-year-old child who had been watching television.

Police recovered seven (7) shell casings from the breezeway near the rear entrance to the apartment. *Id*. Officers observed holes from rounds shot into the television, the living room wall and a bedroom door. Corporal Adam Schurr, Detective James Angelucci and Lieutenant Michael Crescitelli interviewed four of the witnesses at the Norristown Police Department between 9:45 p.m. and 11:46 p.m. that night. *Id*. Each witness identified Appellant as the shooter.

At approximately 10:23 p.m. on the same night, Norristown Police Officer Benjamin Lerman responded to a dispatch call reporting a male passed out in the patio area at 1201 Arch Street. Commonwealth Exhibit C-1, Affidavit of Probable Cause Continuation. . . . The caller, a male resident of the apartment building next to where Appellant had passed out, met Officer Lerman and Officer Fay on arrival. *Id*. at 6. The apartment resident said that Appellant did not live at that address.

As the officers cautiously approached Appellant, they could smell the odor of alcohol coming from him. *Id.* at 6, 7, 10. The officers placed handcuffs on Appellant for their safety and with the intention of arresting Appellant for public intoxication. *Id*. at 7.

[Appellant awoke and identified himself by his first name, and a safety "pat-down" search before placing him in the patrol car revealed an empty handgun tucked in his waistband. A subsequent investigation revealed the handgun had been stolen from a Lansdale gun dealership.

Officer Lerman radioed Corporal Bishop to report that Appellant matched the description of the 624 West Lafayette suspect, which included a tattoo observed by a witness to the shooting. Officers transported Appellant to the police station where, ten hours later,

they read him **Miranda** warnings him and began asking questions about the shooting. Appellant provided a statement indicating he had shot his gun into an apartment window at 624 West Lafayette Street at the time in question.]

Counsel for Appellant, George M. Griffith, Jr., Esquire ("Attorney Griffith") entered his appearance and filed an omnibus pre-trial motion on January 9, 2015. [On July 21, 2015, a jury trial was set to commence as scheduled when Appellant] requested a continuance to possibly engage private counsel, which the court granted by order docketed on July 21, 2015. The record reflects that Appellant requested additional continuances and eventually requested to proceed *pro se*.

A hearing, scheduled under Pa.R.Crim.P. 121 for November 5, 2015, had to be continued because Appellant refused to participate in the required colloquy.[fn] N.T., Pa.R.Crim.P. 121 Hearing, 11/5/15, at 56. During a subsequent hearing on March 31, 2016, Appellant withdrew his request to proceed *pro se* and requested another continuance to obtain private counsel. N.T., Pa.R.Crim.P. 121 Hearing, 3/31/16. The [trial court] issued an order on April 1, 2016, scheduling Appellant's jury trial for May 9, 2016.

---

Fn. During the colloquy, the [trial court] and the ADA explained the elements of the crimes charged, the exposure on each charge, the Commonwealth's burden and the right to counsel before Appellant refused to participate. N.T. Rule 121 Hearing, 11/5/15.

---

[After the court granted the Commonwealth a continuance for a change in prosecutor,] the court scheduled Appellant's jury trial for June 16, 2016. With a jury panel in place and the Commonwealth ready to proceed on June 16, 2016, Appellant again requested a continuance, which [the trial court] reluctantly granted. Appellant claimed that witnesses Faith Norris and Almyra Taylor had made "incriminating" statements to Appellant in recorded telephone conversations while he was incarcerated, and Appellant wanted to be able to play those conversations for the jury.[fn]

Fn. Appellant had raised the same witness credibility issue in his pro se motion to suppress and the undersigned explained to Appellant on the record that the proper avenue to raise the issue was through cross-examination of those witnesses.

The court scheduled Appellant's jury trial to begin on June 27, 2016, by order docketed on June 20, 2016. In the meantime, both Attorney Griffith and the undersigned worked with Inmate Services at the Montgomery County Correctional Facility to provide two CDs of Appellant's recorded telephone conversations with Faith Norris and Almyra Taylor from November 2014 to June 2016. In addition, the court ordered transportation to the courthouse for Appellant to personally listen to the recorded phone calls. Order docketed on June 20, 2016; N.T. Jury Trial (Waiver), 6/27/16, at 10, 17. Although the [trial court] declined to give Appellant another continuance to listen to the CDs, the court explained to Appellant that arrangements would be made for Appellant to listen to them during the trial period when the trial was not occurring.

On Monday, June 27, 2016, with a jury panel as well as Commonwealth witness Faith Norris again present, but prior to jury selection, Appellant made the decision to proceed by way of a stipulated bench trial. *Id*. at 23-24. Appellant acknowledged that Attorney Griffith had explained the procedures as it relates to a stipulated bench trial. *Id*. Additionally, the [trial court] conducted several portions of the colloquy to determine whether Appellant was making the decision to waive a jury trial knowingly, intelligently, and voluntarily, including an explanation of the differences between a stipulated bench trial and a jury trial. *Id*. at 25-36.

When the court concluded that the Commonwealth was going to use Appellant's statement and Attorney Griffith's omnibus pre-trial motion had not yet been heard, the [trial court] granted Appellant's request for a suppression hearing to be held the following day. *Id*. at 37-48. [The trial court] also agreed to allow Appellant to present evidence regarding the telephone conversations with Ms. Norris and Ms. Taylor that Appellant

argued were exculpatory and potentially keep the record open if the court determined that Appellant had raised a meritorious claim. *Id*. at 50.

The court conducted a suppression hearing on June 28, 2016. Appellant sought to suppress the gun recovered from his waistband following his arrest as well as his subsequent statements. Appellant asserted that he had no memory of the events leading up to his arrest or giving a statement. *Id*. at 44, 46-48; N.T. Suppression Hearing, 6/28/16, at 54-63. The Commonwealth offered testimony by Officer Lerman . . ., Corporal Shurr . . ., and Detective Chad Bruckner of the Lansdale Police Department[, who had investigated the burglary of the Lansdale gun dealership. The trial court heard Appellant's testimony, but it concluded he offered neither evidence nor compelling legal argument to support his claim that he had unknowingly and involuntarily waived his **Miranda** rights before providing his statements to police.

Therefore, the trial court] placed its Findings of Fact and Conclusions of Law pursuant to Rule 581(I) of the Pennsylvania Rules of Criminal Procedure on the record at the time of the Hearing. *Id*. at 68-89. Therein, the court specifically found and determined, *inter alia*, as follows: (1) Officer Lerman responded to a call for a person passed out on another's property; 2) upon arrival Officer Lerman encountered Appellant, smelling of alcohol, passed out on someone else's patio; 3) Officer Lerman placed Appellant under arrest for public intoxication at approximately 10:30 p.m.; 4) prior to putting Appellant in the patrol car, Officer Lerman conducted a search incident to arrest and safety pat-down; 5) while doing so, the officer recovered a handgun from Appellant's waistband; 6) Officer Lerman seized the firearm pursuant to a legal arrest and search incident to that arrest; 7) approximately ten (10) hours after [Appellant's] arrest, Corporal Schurr observed an interview of Appellant conducted by Detective Angelucci; 8) Corporal Schurr has training and experience in interviewing hundreds of people under the influence of alcohol or drugs; 9) Corporal Schurr observed Appellant's gait, speech and demeanor and concluded that Appellant was not under the influence of alcohol and appeared to be coherent; 10) Detective Bruckner also testified that based on his training and experience, he determined Appellant was not under the influence, answered all questions logically, was aware of his surroundings and why he was there and provided valuable information on an open burglary

case; 11) both detectives testified that Appellant was alert, attentive, answered questions logically and showed no signs of impairment; and accordingly, 12) the court denied Appellant's motion to suppress the firearm and the two statements to police.

At the conclusion of the suppression hearing, the [trial court] continued with Appellant's colloquy before proceeding to a stipulated bench trial. N.T., Stipulated Bench Trial, 6/28/16, at 90-104. [On the same date,] Appellant also signed a waiver of jury trial form in which he acknowledged the rights he was waiving by proceeding to a stipulated bench trial. Appellant confirmed that he had read the form and that he understood its contents. N.T. Stipulated Bench Trial at 100. [The trial court] answered all of Appellant's questions and, before accepting Appellant's waiver, asked both counsel if they had any questions. Both counsel responded that they did not have any questions. *Id*.

The Commonwealth introduced its evidence for the court's consideration, including the Suppression Hearing testimony, the Affidavit of Probable Cause, a copy of Appellant's federal convictions, photographs of the residence depicting the bullet holes, Appellant's statement to the Norristown Police Department and his statement to the Lansdale Police Department, and the statements from the four witnesses. *Id*. at 104-106.

[The trial court] then asked Attorney Griffith as well as Appellant himself whether either of them had any additional evidence they wanted to introduce and both replied that they did not have additional evidence. *Id*. at 107. Attorney Griffith specifically inquired of Appellant whether he wanted to expand on anything he had previously raised at the suppression hearing and Appellant responded "No." *Id*. Both the Commonwealth and the defense rested on the record. *Id*.

The court took a recess to read the additional evidence and caselaw presented before pronouncing its verdict. *Id*. at 109. Upon [the trial court's] return to the bench to render a verdict, Attorney Griffith informed the court that even though Appellant had told the court when asked whether he had anything else to introduce and Appellant had replied "no," that subsequently Appellant told counsel he wanted to testify. *Id*. at 110.

[The trial court] reminded counsel and Appellant that Appellant had replied "no" when asked if he had anything else before the

court closed the record. [The trial court] also noted that it had incorporated into the record and considered Appellant's testimony from the Suppression Hearing about the telephone calls in rendering its decision. *Id*. [The trial court] entered the verdict as noted above and deferred sentencing until such time as a presentence investigation report and a PPI evaluation could be completed.

[At sentencing, the court imposed a standard range sentence for each conviction. N.T., 9/27/16, at 32-34. After the denial of post-sentence motions seeking only the modification of his sentence, this timely appeal followed.]

Trial Court Opinion, 6/29/18, at 2-12.

Appellant presents the following questions for our consideration:

1. Did Mr. Butler voluntarily, knowledgeably, or intelligently waive his jury trial?

2. Did Mr. Butler voluntarily, knowingly, or intelligently waive his right to present evidence in his own defense, including his own testimony?

3. Was Mr. Butler deprived [of] his right to Due Process under the Pennsylvania and United States Constitutions where he was informed by the trial court that he would be able to present evidence—including to testify on his own behalf—and then the trial court refused to reopen the record so that he could do so?

Appellant's brief, at vii.

In Appellant's first two issues, he argues that the trial court's colloquy failed to explain adequately the consequences of waiving one's right to a jury in favor of proceeding with a stipulated bench trial. The Commonwealth responds that Appellant waived this issue because he failed to make a timely objection before the trial court. We agree.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); ***In Interest of A.W.***, 187 A.3d 247, 253 (Pa. Super. 2018). Our review of the notes of testimony reveals that Appellant, who was represented by counsel at all relevant times, failed to object to the voluntariness of either his jury trial waiver or his stipulation to the Commonwealth's evidence, nor did he otherwise raise these issues in his post-sentence motions. Pa.R.A.P. 302; ***see Commonwealth v. Gumpert***, 512 A.2d 699, 703 (Pa.Super. 1986) (when there is no objection at trial to a judge's failure to give a jury waiver colloquy, the issue is waived insofar as the trial court is denied the opportunity to correct the deficiency). Accordingly, Appellant's first two issues are waived.

In Appellant's remaining issue, he argues that the court deprived him of his rights to due process and fair proceedings when the court informed him he would be able to present evidence during the stipulated bench trial only to thereafter deny him that opportunity. We disagree.

In this regard, Appellant cites to the record where defense counsel indicated that Appellant understood the nature of a stipulated bench trial and "would like to make a statement before the Court." N.T. at 6/27/16, at 24. Later during the same pre-trial proceeding, Appellant addressed the court on whether, during the stipulated bench trial, he could introduce evidence of what he believed to be exculpatory phone calls, which led to the following exchange:

> **Trial Court:** During the trial. I will permit you to do that, even though it's stipulated. I'll hear from you on that. . . . And if it's—if it's meritorious, I may keep the record open for that limited

purpose. That was my thought. Meaning that I will not close the record on the stipulated bench trial if I think you make a meritorious claim, one that has merit.

**Appellant:** Oh, okay. Thank you, Your Honor.

**Trial Court:** Anything else? So my point is, Mr. Butler – because I'm going to let this jury go today based upon the fact you're telling me this is going to be a stipulated bench trial.

**Appellant:** Yes, Your Honor. I agreed to that.

**Trial Court:** You're agreeing on the record right now, right?

**Appellant:** Yes, Your Honor.

**Trial Court:** All right. I just want to make sure. There would be a stipulated bench trial whether I grant the suppression or deny it. It still would have the right to proceed.

So I want to make sure, before I let this jury go, that you are clear, truthful, you're accurate in terms of your representation to me about we were going to a stipulated bench trial because we got about 75 percent through the procedural and the explanation part of it.

**Appellant:** …Like, maybe it's [the alleged miscommunication between defense counsel and Appellant] due to my fault for not expressing certain things or due to the relationship we had in the past. But when it comes to stipulated bench, like, when we was going to trial, I had people who was going to testify on my behalf from both scene [sic]. From the scene at Ms. Taylor's house and from the scene of the cops finding me passed out asleep.

So, with that not being on record anymore, on file, because I'm taking the stipulated bench trial, I'm just asking you what other things is there that I can arouse to possibly help me. Or do I need still to try to get the witnesses that were going to testify for me to come to the suppression? Because that's the part I don't really understand.

> **Trial Court**: No. A suppression hearing is just limited on whether the police had authority to do certain things. Such as search, take statements, things of that nature.
>
> **Appellant:** All right. And I'm –
>
> **Trial Court:** If you have something else, we can talk about it after the suppression, but before I close the record on the stipulated bench as to what, if anything, else you want me to hear.
>
> . . . .
>
> So, counsel, we will have a suppression hearing tomorrow. So we will reconvene at 9:15. We'll do the suppression hearing. And then we'll continue on with the stipulated bench trial.
>
> When the Commonwealth's case is over, I'll hear from you about what else you think I need to consider. All right?
>
> **Appellant:** Okay. Thank you, your Honor.

N.T. at 50-51, 52-53, 54.

Appellant's stipulated bench trial commenced the following day. As the court said it would do, it gave Appellant the opportunity to raise evidence for the court's consideration at the conclusion of the Commonwealth's case. Appellant, however, declined the court's offer:

> **Trial Court:** Anything else from the Commonwealth?
>
> **Prosecutor:** No, Your Honor.
>
> **Trial Court:** Anything else from the defense?
>
> **Counsel:** Judge, no evidence. I don't know if Frank [Appellant] wants to expand on anything he's previously indicated to you at the suppression hearing. Frank?
>
> **Appellant:** No, Your Honor.

> **Trial Court:** Okay. All right. Is counsel resting on the record, then?
>
> **Counsel:** I am.

N.T., 6/28/16, at 107.

The court thereafter closed the record, indicated it would consider statements from the suppression hearing, and adjourned to deliberate. Only when all returned after recess to hear the court's verdict did counsel inform the court that Appellant had wished to make a statement to the court prior to deliberations.

The court deemed the request belated, although it reminded counsel and Appellant that it had specifically incorporated Appellant's statements from the suppression hearing, over the Commonwealth's objections, "to insure that his testimony became part of the trial record." The court then announced its verdict. N.T. at 111.

Appellant now contends that the court failed to provide him with a promised opportunity to discuss evidence for the court's consideration prior to deliberation.[1] The record belies this claim, as it plainly shows how Appellant and counsel declined the court's offer to hear any evidentiary concerns they may have wished to raise after the Commonwealth closed its case-in-chief. Appellant's due process claim, therefore, merits no relief.

Judgment of sentence affirmed.

---

[1] This Court notes the trial court was more than tolerant of Appellant's repeated changes of mind and various requests and demands.

- 11 -

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 11/13/2019*